Argued and submitted November 10, 1997, affirmed April 1, 1998

In the Matter of the Compensation of
Berkley R. Conner, Claimant.

Berkley R. CONNER,
*Petitioner,*

*v.*

B & S LOGGING
and Liberty Northwest Insurance Corporation,
*Respondents.*

(9501484; CA A94371)

957 P2d 159

Donald M. Hooton argued the cause and filed the brief for petitioner.

Alexander Libmann argued the cause and filed the brief for respondents.

Before Warren, Presiding Judge, and Edmonds and Armstrong, Judges.

ARMSTRONG, J.

## ARMSTRONG, J.

Claimant seeks review of an order of the Workers' Compensation Board that held that Liberty Northwest Insurance Co. was not responsible for claimant's compensable injury. We review for errors of law and substantial evidence, ORS 183.482(8), and affirm.

Claimant was first injured in 1985 while working as a logger for Liberty's insured, when he caught his foot in a branch while attempting to avoid being hit by a falling tree. He submitted a claim for a "strained, twisted knee" that was accepted by Liberty. That claim was closed in April 1986 without an award of permanent disability. Claimant injured the same knee again in 1991, when he slipped and fell on a piece of discarded linoleum while working for a new employer that was insured by Kemper Insurance Co. Kemper accepted claimant's claim for a left knee strain. After claimant's second injury, but before the closure of his second claim, claimant underwent testing and surgery that revealed that he suffered from an osteochondral defect within the weight-bearing portion of the lateral femoral condyle. The condition was treated with arthroscopic surgery, and the claim with Kemper was closed in March 1992 without an award of permanent disability.

In 1994, claimant began to experience pain and instability in his left knee. An examination revealed an anterior cruciate insufficiency of the left knee and degenerative change over the lateral femoral condyle of the left knee. Claimant submitted a claim for the new condition to Kemper. Kemper arranged for claimant to be examined by Dr. Farris. Farris agreed with the earlier diagnoses, but was unable to state unequivocally that the current condition of claimant's knee had been caused by either the 1985 or 1991 work-related injury. On the basis of Farris' report, Kemper denied both the compensability of and its responsibility for the claim and suggested that claimant seek compensation from Liberty. Liberty, in turn, denied the claim and suggested that claimant's knee condition had been caused by the later injury suffered while claimant was employed by Kemper's insured. Claimant appealed both denials, but entered into a Disputed

Claim Settlement with Kemper in which he dropped his appeal of that denial in exchange for a payment of $10,000.

After a hearing on claimant's appeal of Liberty's denial of responsibility, the administrative law judge (ALJ) concluded that claimant had not established Liberty's responsibility for either the anterior cruciate ligament (ACL) instability or the degenerative changes to the lateral femoral condyle. Relying on Farris' report, the ALJ concluded that claimant's ACL condition was Kemper's responsibility. As for the degenerative changes to the lateral femoral condyle, the ALJ concluded that claimant had not established that they were a compensable result of the earlier injury.

■ Claimant requested review by the Board, contending that the ALJ had misinterpreted Farris' report and had based her decision on incomplete medical evidence. The Board subsequently adopted and affirmed the ALJ's order and supplemented it with its own conclusion that the resolution of the claim was governed by *Industrial Indemnity Co. v. Kearns*, 70 Or App 583, 690 P2d 1068 (1984). Claimant requested judicial review, raising two assignments of error. First, he contends that the Board erred in applying *Kearns* to his case, because *Kearns* has been overruled legislatively. Second, he contends that the Board's findings were not supported by substantial evidence. Because it is dispositive, we begin with claimant's second assignment of error.[1]

■ Substantial evidence exists to support a finding of fact when the record, viewed as a whole, would permit a reasonable person to make the finding. ORS 183.482(8)(c). The claim at issue involves two distinct conditions, the ACL instability and the degenerative changes to the lateral femoral condyle. The compensability of them is governed by ORS 656.005(7)(a), which provides, in pertinent part:

> "A 'compensable injury' is an accidental injury * * * arising out of and in the course of employment requiring medical services or resulting in disability or death; an injury is

---

[1] Claimant argues that the Board's supplementation of the ALJ's order with its own opinion must be seen as an intention by the Board to supersede the ALJ's order. We disagree. The Board clearly stated that it had adopted and affirmed the ALJ's order. Its supplementary discussion of *Kearns* states alternative ground to affirm the ALJ's decision.

accidental if the result is an accident, whether or not due to accidental means, if it is established by medical evidence supported by objective findings, subject to the following limitations:

"(A)  No injury or disease is compensable as a consequence of a compensable injury *unless the compensable injury is the major contributing cause of the consequential condition.*"[2]

(Emphasis supplied.) Although it is true that, by issuing a denial of responsibility only, Liberty has conceded the compensability of claimant's condition, Liberty could still contest causation. *Castle & Cooke v. Alcanter*, 112 Or App 392, 395, 829 P2d 742 (1992). In order for Liberty to be held responsible for the ACL instability and the defect in the lateral femoral condyle, there must be substantial evidence in the record to support a finding that the 1985 injury was the major contributing cause of the consequential injury. ORS 656.005-(7)(a)(A).

■      Regarding the ACL instability, the objective medical evidence consisted of Farris' report, medical intake records and test results, as well as answers to a set of questions sent by claimant to Dr. Rabie, the physician who treated him for

---

[2] In his brief and at oral argument, claimant treats the earlier knee injuries as preexisting conditions that combined to cause the current condition, thus triggering ORS 656.005(7)(a)(B). The medical evidence indicates that the ACL instability is not a combined condition, however, but, rather, a new condition that may have been caused by one of the two injuries. In that case, ORS 656.005(7)(a)(A) provides the proper analysis. Even if we were to apply ORS 656.005(7)(a)(B), we would reach the same result in this case, because Farris' report can be read to conclude that the 1991 injury was the major contributing cause of the ACL instability, thus satisfying ORS 656.005(7)(a)(B).

We further note that the ALJ reached her original conclusion by applying ORS 656.308(1). However, claimant has framed the issue as an initial claim for previously unaccepted conditions caused by the earlier work-related injuries, and, ORS 656.308(1) does not apply to such a claim. *SAIF v. Yokum*, 132 Or App 18, 22-23, 887 P2d 380 (1994) ("[For ORS 656.308] to be triggered, there must be an accepted claim for the condition, for which some employer is responsible. In an initial claim context, no employer is responsible until responsibility is fixed.") Although both the ALJ and the Board incorrectly based portions of their analysis on ORS 656.308(1), we may nevertheless affirm a correct result that springs from an incorrect analysis if there is substantial evidence to support that result. *Tektronix, Inc. v. Nazari*, 117 Or App 409, 413, 844 P2d 258 (1992), *recons allowed* 120 Or App 590, 853 P2d 315, *rev den* 318 Or 27 (1993).

the 1991 injury. Farris stated that, although it was impossible to identify with certainty the major contributing cause of claimant's injury, the December 1991 and January 1992 test results were consistent with a finding that the 1991 injury was the cause of the current ACL instability. On this record, we conclude that a reasonable person could find that the 1991 injury was the major contributing cause of the ACL instability. The earlier test results were inconclusive, and Rabie's letter to claimant indicated only that he agreed that the 1985 injury could have been a *material* contributing cause of the current ACL instability. Having concluded that the 1991 injury was the *major* contributing cause of the ACL instability, the ALJ and the Board correctly ruled that Kemper was the responsible insurer. ORS 656.005(7)(a)(A).

■     As for the degenerative change to claimant's lateral femoral condyle, the ALJ concluded that there were no diagnostic studies or objective findings to connect that condition to the 1985 injury. The only medical evidence relating to that condition was Farris' report, in which he stated that the debris found during the 1992 arthroscopy was smaller than he would have expected for a seven-week-old injury. Based on that observation, Farris stated that it was probable that the defect predated the 1991 injury, but he did not go so far as to state that it was caused by the 1985 injury. Farris's final conclusion was that claimant's "present knee condition is the result of either the injury of 1985 or the injury of 1991, or a combination of the two."

Claimant argues that Farris' conclusion that the defect probably predated the 1991 injury, coupled with his conclusion that claimant's current knee condition was caused by one or both of the earlier injuries, necessarily compels a finding that the defect was caused by the 1985 injury, for which Liberty is responsible. We disagree. The record in this case shows that the defect was not discovered until an arthroscopy was performed in 1992, seven weeks after the second injury. According to Farris' report, the doctor conducting the arthroscopy found "a lot of small debris." Farris further stated that he would have expected to find larger debris if the defect had been caused by the latest injury. From this record we conclude that, although a reasonable person might find that the defect predated the 1991 injury, that is not the

same as a finding that the 1985 injury was the major contributing cause of the defect. Accordingly, the Board did not err in finding that the evidence was insufficient to support assigning responsibility for the injury to Liberty.[3]

Affirmed.

---

[3] Because we conclude that the ALJ's initial conclusions were supported by substantial evidence in the record as a whole, we need not reach claimant's argument that *Industrial Indemnity v. Kearns* has been overruled legislatively.